# Exhibit A

# Service of Process Transmittal

01/26/2022
CT Log Number 540946026

**TO:**   Allyson Taketa, Senior Paralegal - Litigation
Mattel, Inc.
333 Continental Blvd # TWR15-1
El Segundo, CA 90245-5032

**RE:**   **Process Served in Massachusetts**

**FOR:**   Mattel, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Railway Productions, LLC vs. THOMAS LICENSING, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2283CV00036 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/26/2022 at 15:43 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780114395211 |
| | Image SOP |
| | Email Notification,  Benjamin Maro  Benjamin.Maro@Mattel.com |
| | Email Notification,  Allyson Taketa  Allyson.Taketa@mattel.com |
| | Email Notification,  Julie Daniel  julie.daniel@mattel.com |
| | Email Notification,  Jen Awrey  jennifer.awrey@mattel.com |
| | Email Notification,  Stacey Zartler  stacey.zartler@mattel.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>155 Federal Street<br>Suite 700<br>Boston, MA 02110<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

# Service of Process Transmittal
01/26/2022
CT Log Number 540946026

**TO:**      Allyson Taketa, Senior Paralegal - Litigation
             Mattel, Inc.
             333 Continental Blvd # TWR15-1
             El Segundo, CA 90245-5032

**RE:**      **Process Served in Massachusetts**

**FOR:**     Mattel, Inc.  (Domestic State: DE)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 CT Corporation

**Service of Process Transmittal**
02/07/2022
CT Log Number 541009484

**TO:** Allyson Taketa, Senior Paralegal - Litigation
MATTEL, INC.
333 Continental Blvd # TWR15-1
El Segundo, CA 90245-5032

**RE:** **Process Served in New York**

**FOR:** Thomas Licensing LLC  (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Railway Productions, LLC vs. Thomas Licensing, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2283CV00036 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 02/07/2022 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780123620290<br><br>Image SOP<br><br>Email Notification,  Benjamin Maro  Benjamin.Maro@Mattel.com<br><br>Email Notification,  Allyson Taketa  Allyson.Taketa@mattel.com<br><br>Email Notification,  Julie Daniel  julie.daniel@mattel.com<br><br>Email Notification,  Jen Awrey  jennifer.awrey@mattel.com<br><br>Email Notification,  Stacey Zartler  stacey.zartler@mattel.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>28 Liberty Street<br>New York, NY 10005<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT

**CERTIFIED MAIL**



9414 7266 9904 2191 8006 93

NEOPOST
01/28/2022
**US POSTAGE**



Thank you for using Return Receipt Service

## DAY PITNEY LLP

One Federal Street, 29th Floor, Boston, MA 02110

Thomas Licensing, LLC
c/o CT Corporation
28 Liberty Street
New York, NY 10005
US

# CERTIFIED MAIL

FOLD AND TEAR THIS WAY

DETACH ALONG PERFORATION
USPS® MAIL CARRIER
RETURN RECEIPT REQUESTED

Thank you for using Return Receipt Service

C

 **DAY PITNEY** LLP

BOSTON   CONNECTICUT   FLORIDA   NEW JERSEY   NEW YORK   PROVIDENCE   WASHINGTON, DC

**MELISSA BRUYNELL MANESSE**
Attorney at Law

One Federal Street, 29th Floor
Boston, MA 02110
T: (617) 345-4753 F: (617) 206-9410
mmanesse@daypitney.com

January 28, 2022

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Thomas Licensing, LLC
c/o CT Corporation System
28 Liberty Street
New York, NY 10005

   Re: <u>Railway Productions, LLC v. Thomas Licensing, LLC. and Mattel Inc.</u>
     Plymouth Superior Court 2283CV00036

Dear Sir or Madam:

  With respect to the above referenced matter and as registered agent for Thomas Licensing, LLC, please accept service of the attached:

   1. Summons;
   2. Verified Complaint;
   3. Civil Action Cover Sheet; and
   4. Tracking Order – F – Fast Track.

  Please do not hesitate to call if you have any questions.

        Yours truly,

        /s/  Melissa Bruynell Manesse

        Melissa Bruynell Manesse

MBM/
Enclosures

110918663.1

| **Summons** | CIVIL DOCKET NO.<br>2283CV00036 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Railway Productions, LLC<br><br>VS.<br><br>Thomas Licensing, LLC., and Mattel, Inc. | Plaintiff(s)<br><br><br>Defendant(s) | Clerk of Courts<br>County<br><br>COURT NAME & ADDRESS:<br>Plymouth County Superior Court – Brockton<br>72 Belmont Street<br>Brockton, MA 02301 |
|---|---|---|

THIS SUMMONS IS DIRECTED TO  Thomas Licensing, LLC _____'_____ (Defendant's name)

c/o CT Corporation System
28 Liberty Street, New York, NY 10005

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the **Plymouth County Superior Court – Brockton** Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, **Plymouth County Superior Court – Brockton** '72 Belmont Street, Brockton, MA 02301 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: William M. Pezzoni and Melissa Bruynell Manesse, Esq. Day Pitney LLP, One Federal Street, 29th Floor, Boston, MA 02110

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____**January**_____ . 20 **22** . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____

Signature: _____

**N.B.   TO PROCESS SERVER:**

   PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date:

rev. 7/21

| **Summons** | CIVIL DOCKET NO.<br><br>2283CV00036 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Railway Productions, LLC<br><br>                 VS.<br><br>Thomas Licensing, LLC., and Mattel, Inc. | |
|---|---|

Plaintiff(s)

Defendant(s)

Clerk of Courts

County

COURT NAME & ADDRESS:

Plymouth County Superior Court - Brockton
72 Belmont Street
Brockton, MA 02301

THIS SUMMONS IS DIRECTED TO Thomas Licensing, LLC _____ , (Defendant's name)

c/o CT Corporation System
28 Liberty Street, New York, NY 10005

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Plymouth County Superior Court - Brockton Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. How to Respond.

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

     a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth County Superior Court - Brockton 72 Belmont Street, Brockton, MA 02301 (address), by mail or in person **AND**

     b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: William M. Pezzoni and Melissa Bruynell Manesse, Esq. Day Pitney LLP, One Federal Street, 29th Floor, Boston, MA 02110

3. What to Include in Your Response.

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ January _____ . 20 22 __ . (Seal)

Clerk-Magistrate _____

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

rev. 7/21

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

CIVIL ACTION NO.

RAILWAY PRODUCTIONS, LLC,            )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )
                                     )
THOMAS LICENSING, LLC., and MATTEL,  )
INC.,                                )
                                     )
        Defendants.                  )
                                     )

## VERIFIED COMPLAINT

Plaintiff Railway Productions, LLC ("Railway"), by and through its undersigned counsel, Day Pitney LLP, alleges as follows:

## PARTIES

1.      Railway is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 7 Eda Avenue, Carver, Massachusetts.

2.      Defendant Thomas Licensing, LLC, is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business at 230 Park Avenue South, 13th Floor, New York, New York.   Upon information and belief, Thomas Licensing is a subsidiary and/or affiliate of Defendant Mattel, Inc.

3. Defendant Mattel, Inc. is a corporation organized and existing under the laws of the State of California, with a principal place of business at 333 Continental Boulevard, El Segundo,

California. Thomas Licensing, LLC, and Mattel, Inc. shall hereinafter be referred to collectively as "Mattel."

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction in this case pursuant to G.L. c. 212, § 3.

5.      Venue in Plymouth County is proper pursuant to G.L. c. 223, § 1 because the theme park attraction at issue in this action, the Thomas & Friends attraction at Edaville Family Amusement Park, is located in Plymouth County, and because the events and omissions giving rise to Railway's claims against Mattel occurred in Plymouth County.

## FACTUAL BACKGROUND

### Agreement and Amendments

6.      This action arises out of Mattel's continuous and ongoing willful misrepresentations to Railway in order to induce it to enter into a licensing agreement (and amendments thereto) as well as Mattel's innumerable bad faith failures to fulfill its marketing and merchandising obligations pursuant to that licensing agreement.

7.      Railway and its affiliates own and operate an amusement park known as Edaville Family Amusement Park (the "Park").

8.      In 2013, Railway and Mattel began negotiating the terms of a licensing agreement whereby Railway would license the Thomas & Friends brand from Mattel in order to develop and construct an attraction for the Park known as "Thomas Land."

9.      The intent was that Thomas Land would be a self-contained section of the Park containing Thomas & Friends themed rides, shops, shows, and characters.

10.     During negotiations and in order to induce Railway to enter into the licensing agreement, Mattel made numerous false promises and misrepresentations to Railway's owner,

2

Jon Delli Priscoli, regarding the increased attendance and profits that Thomas Land would drive to the Park.

11.     Specifically, Mattel's authorized agents and representatives, Stacie Marano and Sid Mathur, made materially false promises to Mr. Delli Priscoli related to the value of the Thomas & Friends brand, including regarding what the brand's impact would be on the Park's attendance and revenue if Railway were to construct and open Thomas Land.

12.     In particular, Ms. Marano represented to Mr. Delli Priscoli that the Thomas & Friends brand would drive 300,000 guests to the Park within the first year of Thomas Land opening, and then 700,000 to 800,000 guests per year after that.

13.     Ms. Marano substantiated her representations to Railway by providing Railway with information relating to the performance of the Thomas & Friends theme park located at Drayton Manor in the United Kingdom.  Ms. Marano specifically represented to Mr. Delli Priscoli that the performance of Drayton Manor was a baseline for Thomas Land's guaranteed attendance and profitably.

14.     During negotiations and thereafter, Mr. Mathur repeated Ms. Marano's representations to Mr. Delli Priscoli numerous times, going as far as to promise Mr. Delli Priscoli that Railway would recoup its investment in Thomas Land and turn a profit within the first three years of opening Thomas Land.

15.     Mattel, Ms. Marano, and Mr. Mathur were all aware that the representations to Railway were false at the time they were made.

16.     At the time Mr. Mathur and Ms. Marano made the aforementioned promises and representations to Railway, they did so with knowledge that Mattel could not and would not be

3

willing or able to provide the necessary and promised support to Railway to satisfy Mattel's guarantees.

     17.     On or about February 28, 2014, Railway, in reliance on Mattel's promises and misrepresentations, entered into a licensing agreement with Mattel ("Licensing Agreement") to license the Thomas & Friends brand for use in connection with Thomas Land.

     18.     Mattel, Ms. Marano, and Mr. Mathur continued to make false representations to Railway regarding the value of the Thomas & Friends brand after entering into the Licensing Agreement.

     19.     The Licensing Agreement was subsequently amended by and through several amendments, including: (1) Amendment 1 to the Licensing Agreement, effective August 30, 2016; (2) Amendment 2 to the Licensing Agreement, effective September 13, 2017; (3) Amendment 3 to the Licensing Agreement, effective January 29, 2018; (4) Amendment 4 to the Licensing Agreement, effective July 18, 2018; and (5) Amendment 5 to the Licensing Agreement, effective November 7, 2019.  Amendments 1-5, together with the Licensing Agreement, shall hereinafter be collectively referred to as the "Agreement."

     20.     As set forth in detail below, Mattel and its representatives continued making materially false representations to Railway in order to induce it to enter into certain amendments to the Licensing Agreement.

     21.     The Agreement provided that Railway would pay a $250,000.00 annual licensing fee to Mattel to use the Thomas & Friends brand in connection with Thomas Land, subject to certain limitations set forth in the Agreement relating to the park being open and the occurrence of force majeure events.

4

22.     In reliance on Mattel's pre and post execution promises and misrepresentations to Railway, Railway and its affiliates borrowed and invested over $14,000,000.00 to construct, open, and operate Thomas Land.

**Mattel's Breach and Bad Faith Performance of its Merchandising Obligations**

23.     Pursuant to Paragraph 5.3 of the Agreement, Mattel had the option to make itself the exclusive supplier of Thomas & Friends themed merchandise for Thomas Land.

24.     Mattel exercised its exclusivity rights shortly after Thomas Land opened.

25.     Mattel further advised Railway that it would "need prior written approval from [Mattel] before selling any product in the gift shop not purchased from Mattel."

26.     Mattel denied Railway's requests to purchase Thomas & Friends merchandise for Thomas Land from third parties, though it did allow Railway to purchase Thomas & Friends books from third parties.

27.     Mattel also consistently failed to fulfill its exclusive merchandising obligations to Railway.  In particular:

> a.     Mattel consistently lacked the necessary inventory to fill Railway's merchandise orders;
>
> b.     Mattel consistently failed to fill Railway's orders on time, including during peak seasons like Christmas; and
>
> c.     Mattel was not able to supply Railway with "new" and relevant Thomas & Friends merchandise, notwithstanding that such merchandise was available for Railway to purchase from third party vendors.

28.     The Thomas & Friends merchandise that Mattel sold to Railway also was more expensive than the Thomas & Friends merchandise available for purchase from third parties.

29.     Based on the foregoing, Railway requested that Mattel permit it to purchase Thomas & Friends merchandise for Thomas Land from third parties, but Mattel unreasonably denied such requests (except as to books).

5

30.     Therefore, Mattel acted in bad faith by abusing its discretion to make itself the exclusive supplier of Thomas & Friends merchandise for Thomas Land, and by denying Railway's reasonable request to purchase Thomas & Friends merchandise from third parties.

31.     Mattel's bad faith refusal to allow Railway to purchase merchandise from third parties constituted a breach of the duty of good faith and fair dealing in the Agreement.

32.     Mattel's unwillingness and repeated failures to meet Railway's merchandise needs also constituted a breach of Paragraphs 5.3 and 6.2 of the Agreement, among other provisions.

33.     Based on the above, Railway sustained damages, including lost profits.

**Mattel's Breach and Bad Faith Performance of its Marketing Obligations**

34.     Paragraph 6.3 of the Agreement required that Mattel support the marketing and promotion of Thomas Land in various ways.

35.     For instance, pursuant to paragraph 6.3.1, Mattel was obligated to promote Thomas Land in connection with "Day Out with Thomas" ("DOWT") events.

36.     Mattel failed to promote Thomas Land in connection with the DOWT events, and scheduled few, if any, DOWT events at Thomas Land after Railway entered into the Agreement.

37.     Mattel was further obligated to advertise Thomas Land on its various websites and social media platforms pursuant to Paragraph 6.3.2 of the Agreement.

38.     In violation of Paragraph 6.3.2 of the Agreement, Mattel rarely advertised Thomas Land on its websites and social media platforms, and the advertising it did do was subpar, insufficient, and undesirable.

39.     In fact, after Mattel licensed the Thomas & Friends brand to a competitor to open the theme park "Thomas Town," Mattel focused almost all of its marketing efforts on promoting

Thomas Town on its website and social media platforms to the exclusion and detriment of Thomas Land. *See* infra ¶¶ 57-75.

40.      Mattel's promotion of Thomas Town diverted customers from Thomas Land to Thomas Town, which directly resulted in Railway suffering additional lost revenue and profits.

41.      Pursuant to Paragraphs 6.3.2.6 through 6.3.2.8 of the Agreement, Mattel was required to promote Thomas Land through a minimum number of annual "e-blasts" directed to specific databases of Mattel's customers and prospective customers.

42.      Mattel failed to regularly send e-blasts promoting Thomas Land in accordance with the Agreement, and the e-blasts it did send were not effectively designed or targeted to promote Thomas Land.

43.      Mattel also had the discretion, under paragraph 12.1 of the Agreement, to reject marketing initiatives proposed by Railway.

44.      The Agreement further provided that Mattel's "prior approvals . . . [could] not be unreasonably withheld or delayed."

45.      Mattel unreasonably withheld or delayed its approval for several promotional and marketing ideas proposed by Railway and/or undermined or resisted Railway's promotional ideas.

46.      By way of example, Railway was provided an organic opportunity to market Thomas Land when a special needs child diagnosed with autism made national news related to his desire to visit Thomas Land.

47.      Railway proposed a marketing initiative to Mattel in response to this unsolicited press that included inviting the child to Thomas Land for a VIP experience.

7

48.     Mattel denied Railway's request to open Thomas Land just for the child, his guardians, and classmates.

49.     The extent of Mattel's "support" of this marketing initiative was to provide free coloring books to the child and his classmates.

50.     All other aspects of this marketing initiative were developed, funded, and executed solely by Railway.

51.     Furthermore, in connection with Railway's proposed marketing initiative, it recommended to Mattel that it make broader efforts to welcome members of the autism community to Thomas Land by dedicating an annual day at Thomas Land catering to the autism community. To that end, Railway proposed making Thomas Land more sensory friendly for such events (e.g. reducing sounds, creating quiet rooms with activities, providing headphones to block out train noise, etc.)

52.     Mattel representatives resisted Railway's promotional efforts in this regard, with a Mattel representative stating on one occasion, in sum or substance, that Mattel "doesn't want to get involved with that," *i.e.* that it would not be in the best interests of Mattel or the Thomas & Friends brand to be associated with the autism community.

53.     That same Mattel representative insisted that all marketing and promotion done by Railway for any such autism event be designed to warn other customers coming to the Park and/or Thomas Land that they may have a "different experience" due to the autism event.

54.     Due to Mattel's reticence and lack of support, Railway did not implement any "sensory friendly" days for the autistic community at Thomas Land.

55.     However, Railway did hold events at the Park (but not Thomas Land) that catered to the autism community by making the non-Thomas & Friends rides and activities sensory friendly.

56.     Based on the foregoing, Railway lost significant amounts of revenue and profits through reduced ticket sales and has been unable to pay down its substantial investment in Thomas Land as a result of Mattel's failure to fulfill its promotional and marketing obligations to Railway pursuant to Paragraph 6 of the Agreement.

## Mattel Fraudulently Induced Railway to Execute the Third and Fourth Amendments

57.     Pursuant to Paragraph 4 of the Agreement, titled "Exclusivity," Mattel agreed that for a period of time it would not open or announce the opening of any other Thomas & Friends branded attractions or themed rides within a specific geographical territory (the "Exclusive Territory").

58.     Notwithstanding those restrictions, in or around late 2017, Mattel sought an amendment to the Agreement to permit the opening of another Thomas & Friends attraction called "Thomas Town" at the theme park Kennywood, which is an amusement park located in Pennsylvania that is within the Exclusive Territory.

59.     Railway agreed to the proposed amendment based on Mattel's representations, through its employee and agent, Julie Freeland, that the opening of Thomas Town would not negatively impact attendance at Thomas Land or Railway's revenue because Kennywood is a "regional park" that only draws guests from its local area and customer base.

60.     Railway also agreed to the amendment based on Mattel's representations that it would enter into good faith negotiations to reduce Railway's royalty obligations pursuant to the Agreement.

9

61.     Relying on those representations, Railway executed the Third Amendment to the Agreement on or about January 29, 2018.

62.     Pursuant to the Third Amendment, Railway permitted Mattel to grant "Festival Fun Parks, LLC" a license to open Thomas Town, *i.e.* a Thomas & Friends themed outdoor permanent attraction at Kennywood. The Third Amendment permitted Thomas Town to have up to five rides.

63.     As Mattel and Railway discussed the royalty reduction, Mattel sent Railway a proposed Fourth Amendment to the Agreement purporting to address the royalty reduction, but also proposing to amend the exclusivity and marketing provisions by:

   a.  Modifying the Agreement to define the term "Thomasland Attraction" as a park with seven, instead of five, branded-rides, which would permit Thomas Town to operate more Thomas & Friends rides than previously agreed;

   b.  Substantially narrowing the geographic scope of the Exclusive Territory from 700 miles to 250 miles;

   c.  Eliminating Railway's 90-day exclusive right to first negotiation to develop a new Thomasland Attraction in the Exclusive Territory; and

   d.  Reducing Mattel's obligations to market and promote Thomas Land.

64.     The net effect of Mattel's proposed amendments would be a substantial reduction to Railway's exclusivity protections in the Agreement as well as to modify Mattel's marketing obligations to Railway.

65.     In the discussions leading to the execution of the Fourth Amendment, Mattel continued to represent that Thomas Land would not be negatively impacted by the opening of Thomas Town due to Kennywood's limited geographical reach and customer base.

66.     Based on Mattel's representations, Railway and Mattel executed the Fourth Amendment to the Agreement in or around July 2018.

10

67.     After executing the Fourth Amendment, Railway continued to express concerns to Mattel about Thomas Town's negative impact on Thomas Land, but Mattel dismissed, ignored, and minimized Railway's concerns while prioritizing the success of Thomas Town.

68.     Before and after Kennywood opened Thomas Town, Mattel's pitiful marketing efforts on behalf of Thomas Land declined even further, to the point that Mattel focused all of its promotion and marketing on Thomas Town.

69.     More specifically, Mattel directed prospective customers to Thomas Town instead of Thomas Land on its social media.

70.     In one instance in July 2018, in response to a question from a potential customer on its Thomas & Friends Facebook page asking whether Thomas Town or Thomas Land has more rides, Mattel responded with a link to only Thomas Town's website, notwithstanding that Thomas Land has more rides.

71.     There are several other instances of Mattel directing customers to Thomas Town instead of Thomas Land on its website and social media platforms.

72.     In addition, Mattel also promoted Thomas Town as the second largest permanent Thomas & Friends attraction while ignoring and refusing Railway's request to market Thomas Land as "the largest permanent Thomas & Friends attraction."

73.     Based on the foregoing, it is clear that Mattel's assurances to Railway that the opening of Thomas Town would not negatively impact Railway were false at the time they were made.

74.     As a result, Mattel fraudulently induced Railway to execute the Third and Fourth Amendments to the Agreement.

11

75.     Railway has suffered damages as a result of Mattel's fraudulent representations, including, but not limited to, lost ticket revenue and profits based on the opening of Thomas Town.

## COUNT I
### (Fraudulent Inducement)

76. Railway repeats and makes a part hereof the allegations contained in paragraphs 1 through 75 of the Complaint.

77. Mattel, by and through several of its representatives, made material misrepresentations and omissions related to the success of the Thomas & Friends brand and the brand's ability to increase Railway's revenue and profit margins in order to induce Railway to enter into the Agreement.

78. In addition, Mattel, by and through several of its representatives, made material misrepresentations and omissions regarding Kennywood and the prospective opening of Thomas Town in order to induce Railway to relinquish its exclusivity rights under the Agreement.

79. Specifically, Mattel representatives made material misrepresentations that:

a.  The opening of Thomas Land would bring 300,000 guests to the Park in the first year in addition to 700,000 to 800,000 guests per year after that.

b.  Railway would recoup its investment in Thomas Land and turn a profit within three years of opening Thomas Land.

c.  Railway's consent to amend the Agreement to permit the opening of Thomas Town would not negatively impact attendance at Thomas Land or Railway's revenue or profitability.

d.  Kennywood's opening of Thomas Town would not impact Thomas Land because Kennywood is a regional park that would only draw from its locality and existing customer base.

80. Notwithstanding the foregoing representations regarding the profitability of the Thomas & Friends brand, Railway has not recouped its investment in Thomas Land, let alone

within the first three years of opening, and has never reached the promised 300,000 guests per year, let alone in the first year of its opening.

81. Notwithstanding the foregoing representations relating to Thomas Town and Kennywood, Mattel directed prospective customers to Thomas Town instead of Thomas Land on its social media platforms, and marketed and promoted Thomas Town to the exclusion and detriment of Thomas Land.

82. Mattel knew or should have known that the material misrepresentations were false at the time its representatives made them.

83. Mattel's pattern of misrepresentations and omissions were made in order to induce Railway to enter into the Agreement as well as the Third and Fourth Amendments thereto.

84. Railway reasonably believed Mattel's statements were true.

85. Relying on these misrepresentations and omissions, Railway entered into the Agreement, as well as the Third and Fourth Amendments thereto.

86. Railway would not have entered into the Licensing Agreement or the Third or Fourth Amendments thereto, but for the material misrepresentations and/or omissions made by Mattel.

87. Therefore, Mattel fraudulently induced Railway to enter into the Licensing Agreement and Third and Fourth Amendments thereto.

88. Railway has been damaged as a result of Mattel's fraudulent inducement.

## COUNT II
### (Breach of Contract)

89. Railway repeats and makes a part hereof the allegations contained in paragraphs 1 through 88 of the Complaint.

13

90. There is an Agreement between Railway and Mattel, pursuant to which Railway was granted an exclusive license to use the Thomas & Friends brand to open and operate Thomas Land within the Exclusive Territory.

91. Pursuant to the Agreement, Mattel was obligated to supply Railway with Thomas & Friends merchandise to be sold at Thomas Land, as well as to promote and market Thomas Land in various ways.

92. Mattel repeatedly failed to fulfill its obligations pursuant to the Agreement related to supplying Thomas & Friends merchandise to Railway and marketing and promoting Thomas Land in accordance with the Agreement.

93. Mattel's failure to fulfill its obligations under the Agreement, including its merchandising, marketing, and promotional obligations, constitutes a breach of the Agreement.

94. Railway has been damaged by Mattel's breach of the Agreement, which directly caused a significant reduction in Railway's ticket sales, merchandise sales, and profits.

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

95. Railway repeats and makes a part hereof the allegations contained in paragraphs 1 through 94 of the Complaint.

96. An implied covenant of good faith and fair dealing is inherent in the Agreement, and all Amendments thereto.

97. The implied covenant of good faith and fair dealing required Mattel to perform its contractual obligations and exercise its discretion pursuant to the Agreement in such a way that it would not injure Railway or otherwise impair Railway's right to receive the benefits of the Agreement.

14

98. Based on the conduct set forth in detail above, Mattel breached the implied covenant of good faith and fair dealing by exercising certain contractual rights in bad faith.

99. In particular, Mattel breached the implied covenant of good faith and fair dealing by abusing its discretion to make itself the exclusive supplier of Thomas & Friends themed merchandise for Thomas Land, and then unreasonably withholding permission for Railway to procure merchandise from third party vendors when it could not meet Railway's merchandising demands.

100.   Mattel also breached the implied covenant of good faith and fair dealing by failing to fulfill its obligations pursuant to the Agreement to market and promote Thomas Land in good faith.

101.   Mattel also abused its discretion by refusing to support Railway's promotional and marketing efforts for Thomas Land that would greatly benefit Railway and Thomas Land while simultaneously protecting and uplifting the Thomas & Friends brand.

102.   By way of example, Mattel did not support Railway's marketing initiatives relating to hosting a special needs child at Thomas Land and dedicating annual "sensory friendly" days at Thomas Land that would be specifically designed for those with special needs, going as far as to state that they did not want to be "involved" with such events.

103.   Further evidence of Mattel's bad faith includes its demand for licensing fees from Railway pursuant to the Agreement while the Park and Thomas Land were shut down by the government due to the COVID-19 pandemic.

104.   As a consequence of Mattel's bad faith performance and breach of the covenant of good faith and fair dealing, Railway has been damaged.

15

**COUNT IV**
**(Unfair Trade Practices in Violation of G.L. c. 93A)**

105.     Railway repeats and makes a part hereof the allegations contained in paragraphs 1 through 104 of the Complaint.

106.     Mattel engaged in an unfair method of competition and committed unfair deceptive practices by fraudulently inducing Railway to enter into the Licensing Agreement by guaranteeing that the Thomas & Friends brand would drive a minimum number of guests to the Park per year and that Railway would recoup its investment in Thomas Land within three years.

107.     Mattel substantiated its promises by using the Thomas & Friends attraction at Drayton Manor in the United Kingdom as a baseline and guarantee of future performance.

108.     Mattel continued making material misrepresentations and false promises to Railway throughout the life of the Agreement, including to encourage it to remain in the Agreement and continue to execute amendments to the Agreement.

109.     Mattel further committed deceptive practices in promising to engage in discussions to lower the royalty fees Railway paid annually to Mattel in order to pressure and induce Railway into waiving its exclusivity rights under the Agreement by and through the Third and Fourth Amendments to the Licensing Agreement.

110.     Mattel made a series of deceptive statements about Kennywood and Thomas Town, a theme park that could not be opened pursuant to the Agreement without Railway's express permission.

111.     Mattel's deceptive statements included false representations that Kennywood was a regional park and that Thomas Town would not affect attendance at Thomas Land or Railway's revenue and profits.

16

112. Nevertheless, Mattel promoted and marketed Thomas Town to the exclusion and detriment of Thomas Land, even when Thomas Town began intruding on Railway's region and customer base.

113. Even after the Third and Fourth Amendments were each executed and Railway expressed concerns about Mattel's marketing and promotional efforts falling short, Mattel continued to reassure and make deceptive statements in an attempt to pacify Railway while Railway suffered greater damages and losses.

114. As a result, Railway suffered a loss of money in decreased ticket sales and declining merchandise sales.

115. Mattel's unfair and deceptive practices caused the losses suffered by Railway.

### PRAYER FOR RELIEF

**WHEREFORE**, Railway respectfully prays for judgment against Mattel as follows:

(1) As to Count I, a judgment that Mattel fraudulently induced Railway into entering into the Licensing Agreement and the Third Amendment and Fourth Amendment thereto, and rescinding the Agreement and awarding Railway compensatory damages in an amount to be determined.

(2) As to Count II, a judgment that Mattel has breached the Agreement, and awarding Railway compensatory damages in an amount to be determined.

(3) As to Count III, a judgment that Mattel has breached the implied covenant of good faith and fair dealing and awarding Railway compensatory damages in an amount to be determined.

(4) As to Count IV, a judgment that Mattel engaged in unfair trade practices in violation of G.L. c. 93A, and awarding Railway compensatory damages in an amount to be

determined, treble damages, and Railway's attorneys' fees and costs pursuant to G.L. c. 93A §

11.

      (5)    As to all Counts, a judgment awarding Railway its costs associated with this

action, pre-judgment interest, and all other relief as the Court may deem just and proper.

## JURY DEMAND

      Plaintiff Railway Productions, LLC demands a trial by jury on all claims so triable.

                  Respectfully submitted,

                  RAILWAY PRODUCTIONS, LLC,

                  By its attorneys,

Dated:  January 14, 2022             /s/  William M. Pezzoni

                  William M. Pezzoni (BBO #397540)
                  wpezzoni@daypitney.com
                  Melissa Bruynell Manesse (BBO #685766)
                  mmanesse@daypitney.com
                  DAY PITNEY LLP
                  One Federal Street, 29th Floor
                  Boston, MA 02110
                  T: (617) 345-4600
                  F: (617) 345-4745

18

**VERIFICATION**

I, John Delli Priscoli, individually and on behalf of Railway Productions, LLC, am familiar with and have personal knowledge of the facts upon which this action is based. I have read the foregoing Verified Complaint, and the factual allegations contained therein, except for those matters alleged upon information and belief, are true based upon my own personal knowledge, the business records of Railway Productions, LLC, and/or communications with employees of Railway Productions, LLC, upon whom I regularly rely.

Signed under the pains and penalties of perjury this 3rd day of January 2022.

_____
John Delli Priscoli

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | |
|---|---|---|
| **PLAINTIFF(S):** Railway Productions, LLC | | **COUNTY** |
| **ADDRESS:** 7 Eda Avenue, Carver, Massachusetts | | |
| | **DEFENDANT(S):** Thomas Licensing, LLC., and Mattel, Inc., | |
| **ATTORNEY:** William M. Pezzoni (BBO #397540) | | |
| **ADDRESS:** Melissa Bruynell Manesse (BBO #685766) | **ADDRESS:** 230 Park Avenue South, 13th Floor, New York, New York | |
| Day Pitney LLP, One Federal Street, 29th Floor, Boston, MA 02110 | 333 Continental Boulevard, El Segundo, California | |
| **BBO:** | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A03 | Commercial Paper / Breach of loan contract | F | [x] YES    [ ] NO |

**\*If "Other" please describe:**

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................................................................. $ _____
    2. Total doctor expenses ............................................................................................................... $ _____
    3. Total chiropractic expenses ...................................................................................................... $ _____
    4. Total physical therapy expenses .............................................................................................. $ _____
    5. Total other expenses (describe below) ..................................................................................... $ _____
                                                        Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................................................................ $ _____
C. Documented property damages to dated ........................................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses .......................................................... $ _____
E. Reasonably anticipated lost wages .................................................................................................... $ _____
F. Other documented items of damages (describe below) ...................................................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                     TOTAL (A-F):$ _____

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
Defendants breached their obligations to Plaintiff under licensing agreement, and acted fraudulently and in bad faith in     **TOTAL: $**   $25,000

violation of the implied covenant of good faith and fair dealing and G.L. c. 93A in connection therewith.

**Signature of Attorney/Pro Se Plaintiff: X**                         **Date:**

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

N/A

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X**   /s/ Melissa Bruynell Manesse           **Date:** 1/14/2022

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c.231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical / Wrongful Death | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death, G.L. c.229 §2A | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 §28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c.249 §4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93 §9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93 §8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149 §§29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12 §11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123 §9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c265 §56 | (X) |
| E95 Forfeiture, G.L. c.94C §47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice  - Tribunal only, G.L. c. 231 §60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A §12 | (X) |
| E14 SDP Petition, G.L. c. 123A §9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c.6 §178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112 §12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

### A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2283CV00036 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Railway Productions, LLC vs. Thomas Licensing, LLC et al | Robert S. Creedon, Jr., Clerk of Courts |
|---|---|

| TO: Thomas Licensing, LLC<br>No addresses available | COURT NAME & ADDRESS Plymouth County Superior Court - Brockton 72 Belmont Street Brockton, MA 02301 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 04/19/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 05/18/2022 | |
| All motions under MRCP 12, 19, and 20 | 05/18/2022 | 06/17/2022 | 07/18/2022 |
| All motions under MRCP 15 | 05/18/2022 | 06/17/2022 | 07/18/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 11/14/2022 | | |
| All motions under MRCP 56 | 12/14/2022 | 01/13/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 05/15/2023 |
| Case shall be resolved and judgment shall issue by | | | 01/18/2024 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 01/18/2022 | ASSISTANT CLERK | PHONE |
|---|---|---|